UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL LYNN BOGART,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No.  2:19-cv-0584-KJN<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 14, 17) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Title II disability insurance benefits.[1]  In her summary judgment motion, plaintiff primarily contends the Administrative Law Judge ("ALJ") erred by failing to properly weigh the medical evidence and by failing to assess her subjective testimony.  The Commissioner opposes and has filed a cross-motion for summary judgment.

As set forth below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's motion, and AFFIRMS the final decision of the Commissioner.

////

////

////

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and the parties consented to the jurisdiction of the undersigned for all purposes.  (See ECF Nos. 7, 8, 18.)

1

## I. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS[2]

Plaintiff applied for benefits on April 21, 2015, alleging an onset date of November 30, 2014. (Administrative Transcript ("AT") 143.) Plaintiff claimed the following medical conditions: diabetes, fibromyalgia, abnormal mammogram and liver imaging, degenerative osteoarthritis, compression fracture in the back, herniated disc in her neck, osteoporosis, scoliosis, spondylosis, high blood pressure, thyroid condition, cataract surgery, possible glaucoma, and high cholesterol. (AT 63-64.) Plaintiff's application was denied initially and again upon reconsideration. (AT 80-84, 88-92.) Plaintiff, aided by an attorney, sought review of these denials with an ALJ. (AT 93-94.)

At a March 6, 2017 hearing, plaintiff testified about her conditions, and the ALJ heard testimony from a vocational expert regarding plaintiff's ability to work. (AT 39-62.) On May 31, 2017, the ALJ issued a decision determining that plaintiff was not disabled during the relevant period. (AT 21-38.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity during the period of her alleged onset date of November 30, 2014, through her last date insured, December 31, 2014. (AT 26.) At step two, the ALJ found plaintiff had the following severe impairments: "cervical degenerative disc disease, status post T8 compression

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571–76; Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). The following summarizes the sequential evaluation:

    **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    **Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
    **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

fracture, and hip osteoarthritis." (Id.)  The ALJ found plaintiff's other impairments did not cause "more than minimal limitation in the claimant's ability to perform basic work activities and therefore were not severe." (Id.)  At step three, the ALJ determined the severe impairments did not meet or medically equal a listed impairment. (AT 27.)

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work through her last date insured. (AT 27.)  In reaching this conclusion, the ALJ stated he considered plaintiff's expressed symptoms, the objective medical evidence in the record, and the opinion evidence in the record. (Id.)  The ALJ found the severity of plaintiff's expressed symptoms to be inconsistent with the medical evidence and other evidence in the record. (AT 28.)  Specifically, the ALJ found that although plaintiff sought extensive treatment for her conditions after December 31, 2014, she required minimal treatment during the relevant period. (AT 28-29.)  The ALJ concluded at step four that plaintiff was capable of performing her past relevant work as a reporter. (AT 31.)  In the alternative, the ALJ found that there were a significant number of jobs in the national economy that plaintiff could perform. (AT 32.)

Plaintiff appealed to the Appeals Council and submitted additional medical records. (See AT 2, 141.)  On January 24, 2018, the Council denied plaintiff's appeal. (AT 10-14.)  Plaintiff then timely filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 14, 17.)

II.   **LEGAL STANDARD**

The court reviews the Commissioner's decision de novo and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008).  Further, the

court may not reverse the ALJ's decision on account of harmless error.  Buck, 869 F. 3d at 1048.

### III.     ISSUES PRESENTED

Plaintiff alleges three errors on the ALJ's part:  (A) that the ALJ failed to sufficiently discuss relevant opinion evidence; (B) that the ALJ rejected her subjective complaints without providing clear and convincing reasons; and (C) that the ALJ's RFC and hypothetical questions were legally inadequate.  Plaintiff requests that this court remand for the payment of benefits. (ECF No. 14.)  The Commissioner counters each of plaintiff's arguments and maintains the ALJ's opinion should be affirmed.  (ECF No. 17.)

### IV      DISCUSSION

As an initial matter, and generally pertinent to all of plaintiff's points, plaintiff must establish that she was disabled within a relatively short timeframe:  between her alleged onset date, November 30, 2014, and her date last insured, December 31, 2014. See Lair-Del Rio v. Astrue, 380 F. App'x 694, 695 (9th Cir. 2010) (explaining the relevant time period for Title II actions).  Accordingly, generally speaking, records from within the relevant timeframe will have the most value, and as time passes these records will lose their probative weight.

#### A.     Substantial evidence supports the ALJ's evaluation of medical opinions.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Id. at 830.  While a treating professional's opinion

generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[3] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831. Importantly, when "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). "[T]he ALJ is not required to discuss evidence that is neither significant nor probative." Id.

Dr. Carey

Plaintiff first contends that the ALJ erred by failing to discuss a letter from Dr. Carey dated July 16, 2003. An ALJ is only required to discuss significant, probative evidence. Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (holding that evidence that is not significant or probative need not be explicitly discussed by the ALJ); accord Barreras v. Saul, 803 F. App'x 70, 73 (9th Cir. 2020).

Here, the evidence proffered by plaintiff is neither significant nor probative. Dr. Carey's one-page letter from 2003 states that plaintiff "continues to have problems with fibromyalgia." (AT 429.) To the extent that this letter arguably constitutes medical opinion evidence, the statement that plaintiff has "problems with fibromyalgia" is not probative as to plaintiff's alleged limitations more than ten years later. See Vincent, 739 F.2d at 1395 (ALJ did not need to discuss opinion of doctor who had treated claimant several years before the alleged onset date and had

---

[3] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

not examined him in several years); Gunderson v. Astrue, 371 F. App'x 807, 809 (9th Cir. 2010) (ALJ did not err by discounting medical opinion of doctor who conducted examination "nearly two years before the alleged onset date of [claimant]'s disabilities"). Additionally, the ALJ specifically mentions plaintiff's fibromyalgia, but found the symptoms non-severe. (See AT 26-27.) Thus, the ALJ's failure to mention this particular report was not in error.

Dr. Saini

Plaintiff asserts that the ALJ failed to consider two "to whom it may concern" letters from Dr. Saini dated September 25, 2015, and November 4, 2015, and also improperly dismissed a form that checked "disabled" prepared by Dr. Saini on February 7, 2013.

According to plaintiff, the two "to whom it may concern" letters document plaintiff's "chronic pain and fatigue which limited her ability to work and carry out daily activities." (ECF No. 14 at 12.) However, these one-page letters merely list plaintiff's diagnoses, and restate some of her subjective symptoms. (AT 438-39.) The letters then conclude that plaintiff is limited in her ability to carry out daily activities and limited in her ability to work. (Id.) These letters are neither significant nor probative to plaintiff's claims. Plaintiff fails to identify any specific workplace limitation to which Dr. Saini opined about in these letters that the ALJ failed to include in plaintiff's RFC. Additionally, the ALJ specifically mentions and discounts multiple reports from Dr. Saini, laying out sufficient reasons for discounting the doctor's similar opinions. (AT 29-30) see Vincent, 739 F.2d at 1394–95 (9th Cir.1984) (holding that ALJs need not discuss every piece of evidence presented). Thus, the ALJ did not err by failing to mention these specific letters.

As to the February 7, 2013 form, Dr. Saini checked "yes" in response to the question "is the household member disabled as defined below?" (AT 223.) The ALJ discounted this form because checking "disabled" was not a medical opinion, the finding is inconsistent with plaintiff's admission that her disability did not begin until November 30, 2014, and the form is devoid of any diagnosis or clinical finding. (AT 29.) The ALJ correctly noted that the finding of "disabled" was not an appropriate medical opinion, but rather an issue reserved for the Commissioner, see 20 C.F.R. § 404.1527(d), and was lacking in any clinical diagnosis or finding,

6

1  see Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (noting that an ALJ need not accept an
2  opinion "if that opinion is brief, conclusory, and inadequately supported by clinical findings").
3       Accordingly, the ALJ did not err by not explicitly mentioning letters from Dr. Saini and
4  did not err in discounting the February 7, 2013 live-in form.
5       Dr. Lau
6       Next, plaintiff contends that the ALJ mischaracterized Dr. Lau's medical opinion.  The
7  document that plaintiff contends that the ALJ did not properly consider is a questionnaire
8  conducted by Dr. Lau on February 13, 2017.  (AT 489.)  On this form, in response to the question
9  "[d]o you feel the medical problems for which you have treated the claimant preclude her from
10 performing any full-time work at any exertion level?" Dr. Lau responded "yes" due to plaintiff's
11 chronic fibromyalgia and cervical degenerative arthritis.  (Id.)
12      The ALJ gave little weight to Dr. Lau's opinion for multiple reasons; specifically The ALJ
13 noted that: Dr. Lau's questionnaire was completed more than two years after the end of the
14 relevant period, that the questionnaire is devoid of any examinations or clinical findings to
15 support her statements or diagnosis during the relevant period, and that Dr. Lau did not include
16 the frequency or duration of plaintiff's fibromyalgia symptoms.  (AT 30-31.)
17      An ALJ can properly reject opinions that do not contain sufficient rationales for their
18 conclusions, such as insufficiently explained check-off reports.  Molina v. Astrue, 674 F.3d 1104,
19 1111 (9th Cir. 2012) ("We have held that the ALJ may 'permissibly reject[ ] ... check-off reports
20 that [do] not contain any explanation of the bases of their conclusions.'"  quoting Crane v.
21 Shalala, 76 F.3d 251, 253 (9th Cir.1996)); see also 20 C.F.R. § 404.1527 ("The better an
22 explanation a source provides for a medical opinion, the more weight we will give that medical
23 opinion.").  An "ALJ need not accept the opinion of any physician, including a treating physician,
24 if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas,
25 278 F.3d at 957.
26      Here, the ALJ properly noted the lack of sufficient clinical findings, diagnosis, or
27 examinations to corroborate Dr. Lau's disability determination.  Thus, given Dr. Lau's conclusion
28 that plaintiff could not perform any full-time work and the lack of detailed findings, the ALJ had

sufficient evidence to support his decision to give Dr. Lau's opinion little weight. See Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986) (holding that "the lack of detailed clinical findings in Dr. Collins' March 26, 1981 form report, and the fact that the report's finding of 'total disability' contradicted all the earlier medical reports . . . the administrative law judge had substantial evidence to support his conclusion that appellant was not disabled").

Additionally, the ALJ was correct in determining the timing of the questionnaire qualified its probative value. (AT 30.) As the ALJ noted, Dr. Lau's opinion was "given little weight because it was written more than two years after the end of the relevant period . . . and Dr. Lau stated she does not know when [plaintiff's] disability began." (Id.) An ALJ may properly consider the remoteness of an evaluation when weighing a medical opinion. Wallace v. Berryhill, 2017 WL 3835169, at *3 (C.D. Cal. Aug. 31, 2017). "Remoteness is most relevant where the medical opinion is based entirely on an examination that is outside the relevant period under consideration." Id. (internal quotations omitted). In other words, an ALJ can properly disregard an opinion when it was made so far after the plaintiff's last date of insurance that it lacks probative value. See Lombardo v. Schweiker, 749 F.2d 565, 567 (9th Cir. 1984) (ALJ properly disregarded opinion of treating physician who examined claimant a year and a half after the relevant period). Given the length of time between the last date plaintiff was insured and the date of the questionnaire, the ALJ properly considered Dr. Lau's opinion to be too remote to be given controlling weight.

Accordingly, the court finds that substantial evidence supports the ALJ's assignment of little weight to Dr. Lau's opinion.[4]

////

---

[4] Plaintiff makes a brief final argument that the ALJ failed to consider the effects of her obesity on her limitations. (ECF No. 14 at 15-16.) However, while plaintiff cites to three pages of the administrative transcript that list her BMI between 33.65 and 34.02 (AT 286-88), plaintiff does not cite to any medical record that found her to be limited due to her obesity and does not make any argument that the ALJ erred in finding this impairment non-severe. Accordingly, the court rejects this argument. See Artis v. Barnhart, 97 F. App'x 740, 741 (9th Cir. 2004) (claimant "bears burden of establishing the existence of a severe impairment, and ultimate disability, prior to the last date insured").

**B.     The ALJ properly considered plaintiff's subjective symptom testimony.**

Plaintiff next argues that the ALJ improperly rejected her statements regarding her pain and functional limitations. The court disagrees.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking." Molina, 674 F.3d at 1112.

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas, 278 F.3d at 958-59; (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

In the present case, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were not consistent with the medical evidence and other evidence in the record. (AT 28.) Specifically, the ALJ found that plaintiff's subjective pain testimony conflicted with the objective medical evidence and plaintiff's sparse treatment history.

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). Although lack of medical evidence cannot form the sole basis for discounting a plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

The ALJ in the present case found plaintiff's subjective symptom testimony to be inconsistent with the objective medical evidence. For example, the ALJ examined reports from 2014 and 2015 that showed plaintiff had no joint pain or swelling and that plaintiff had a normal gait (AT 30-31, 262, 267, 271, 369). The ALJ also relied on records that showed minimal degenerative changes in plaintiff's spine and mild osteopenia in plaintiff's left hip. (AT 29-30, 341-42, 430.) These records are inconsistent with the level of pain plaintiff describes and were properly considered by the ALJ.

Similarly, the lack of consistent treatment during the relevant period, between plaintiff's alleged onset date and her last date insured, was appropriately considered by the ALJ.

Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch, 400 F.3d at 681. "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted). However, failure to obtain treatment due to lack of insurance or funding cannot support an adverse credibility finding. Orn v. Astrue, 495 F.3d

625, 638 (9th Cir. 2007).

Here, the ALJ noted that the record "documents few, if any, complaints of back, neck, hip muscle, or other pain complaints and no treatment for pain prior to April 13, 2015." (AT 30.) While plaintiff objects that the ALJ did not properly account for her lack of insurance, the ALJ specifically stated that plaintiff did not have insurance for a period of time but qualified for Medicare on March 9, 2014, more than eight months prior to plaintiff's alleged onset date. (AT 28.) Plaintiff's failure to seek treatment during the relevant period, and failure to seek treatment close-in-time to that period, is therefore a valid consideration for the ALJ in discounting plaintiff's subjective symptoms.

Accordingly, the court finds that the ALJ relied on clear and convincing reasons for rejecting plaintiff's testimony, and therefore did not err.

### C. The ALJ did not err in formulating plaintiff's RFC.

Plaintiff makes two arguments under her final point: that the ALJ erred by stating that she could perform medium work when formulating her RFC and that the ALJ erred by failing to incorporate certain limitations into her RFC.

Plaintiff first argues that the ALJ erred by finding that she could perform medium work because "there was no RFC for light or medium work in the record." (ECF No. 14 at 19.) In support of plaintiff's proposition that the light or medium work conclusion was in error, plaintiff largely rehashes the same argument that the court previously discussed in the context of the ALJ's rejection of plaintiff's subjective symptoms. (See ECF No. 14 at 19-20.) Because the court already found such arguments unavailing in that context, they are similarly unavailing here. Additionally, even assuming *arguendo* that the ALJ erred in determining that plaintiff could perform medium work, because the ALJ found that plaintiff could perform her past relevant work, which is classified as light work (AT 31), such an error would be harmless. See Azami v. Apfel, 24 F. Supp. 2d 1007, 1010 (C.D. Cal. 1998) (finding any alleged error that claimant could perform medium work to be harmless, as the ALJ also found that claimant could perform his past, light-level work).

Second, plaintiff asserts that the ALJ erred by not including limitations in plaintiff's RFC

11

that were included in hypothetical questions addressed to the vocational expert.  However, an ALJ is under no obligation to include every hypothetical limitation in a claimant's RFC; rather, an ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."  Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164–65 (9th Cir.2001)).  Thus, the ALJ did not err by failing to incorporate the limitations here.

Therefore, plaintiff is not entitled to relief under her final point.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is GRANTED;
3. The ALJ's decision is AFFIRMED; and
4. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

IT IS SO ORDERED.

Dated:  September 14, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

584.bog